IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| JAYSEPH RYAN GUNN, #475851, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>CORE CIVIC, et al., )<br>)<br>    Defendants. ) | Case No. 1:24-cv-00073<br>Judge Trauger |

# MEMORANDUM OPINION AND ORDER

Jayseph Gunn, a state inmate confined at the South Central Correctional Facility (SCCF), has filed a pro se civil rights Complaint under 42 U.S.C. § 1983 (Doc. No. 1) and an application for leave to proceed in forma pauperis (IFP). (Doc. No. 2.)

This case is before the court for ruling on the plaintiff's IFP application and for initial review of the Complaint under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A.

## I. PAUPER STATUS

A prisoner bringing a civil action may be permitted to proceed as a pauper, without prepaying the filing fee. 28 U.S.C. § 1915(a). Because it appears from the plaintiff's submissions that he lacks the funds to pay the entire filing fee, his IFP application (Doc. No. 2) is **GRANTED** and a $350 filing fee is **ASSESSED**.[1] The fee will be collected in installments as described below.

---

[1] Prisoners bringing civil lawsuits or appeals are "required to pay the full amount of a filing fee," 28 U.S.C. § 1915(b)(1), either in a lump sum at the time of filing or in installments over time via an assessment against the prisoner's inmate trust account. Where the prisoner is granted pauper status and allowed to pay in installments, the fee is $350. See 28 U.S.C. § 1914(a)–(b) & Dist. Ct. Misc. Fee Schedule, provision 14 (eff. Dec. 1, 2023).

The warden of the facility in which the plaintiff is currently housed, as custodian of his trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to the plaintiff's credit at the jail; or (b) 20% of the average monthly balance to the plaintiff's credit for the six-month period immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of the plaintiff's preceding monthly income (or income credited to the plaintiff for the preceding month), but only when the balance in his account exceeds $10. *Id.* § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. *Id.* § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this order to the warden of the facility in which the plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If the plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this order follows the plaintiff to his new place of confinement, for continued compliance with the order. All payments made pursuant to this order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

## II. INITIAL REVIEW

### A. Legal Standard

In cases filed by prisoners, the court must conduct an initial screening and dismiss the Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). Review under the same criteria is also authorized under 28 U.S.C. § 1915(e)(2) when the prisoner proceeds IFP.

To determine whether the Complaint states a claim upon which relief may be granted, the

court reviews for whether it alleges sufficient facts "to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The court must afford the pro se Complaint a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to the plaintiff. *Inner City*, *supra*.

The plaintiff filed the Complaint under Section 1983, which authorizes a federal action against any person who, "under color of state law, deprives [another] person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (citations omitted); 42 U.S.C. § 1983. The Complaint must therefore plausibly allege (1) a deprivation of a constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

**B. Facts**

The plaintiff alleges that he was wrongfully convicted of a disciplinary infraction at a February 26, 2024 hearing where Officer Cierra Pierce presided and the Tennessee Department of Correction's (TDOC) Contract Monitor of Operations (CMO) at SCCF, Robert Turman, was present, but where neither the plaintiff nor anyone representing him was present. (Doc. No. 1 at 4–5.) The plaintiff alleges that the name and inmate number of an inmate advisor was forged on the

document that memorializes the disciplinary hearing, indicating (falsely) that the advisor was present at the hearing to represent the plaintiff and that they had adequate time to prepare a defense. (*Id.*) Officer Pierce later acknowledged, in front of the plaintiff, that in fact the inmate advisor was not present on the date of the hearing. (*Id.* at 5.) The plaintiff did not receive forms on which to file a disciplinary appeal for three months, even though such forms are supposed to be delivered within five days. (*Id.*) CMO Turman failed in his duty to monitor disciplinary hearings at the privately-operated SCCF for compliance with state standards, by "knowingly and intentionally" allowing the disciplinary board to violate the plaintiff's rights. (*Id.* at 6.) The plaintiff alleges that the SCCF administration is denying him legal assistance, notary services, and copies of his legal documentation. (*Id.*) He asks the court (1) to recognize that the defendants' actions have kept him from making parole, (2) to "reinstate all [his] good days," (3) to award him compensation for the "mental stress" he has endured, (4) to hold defendants responsible for "the negligence, harassment and retaliation" he has suffered "since this wrongful conviction," and (5) to order reimbursement for his "property and commissary that was not inventoried and stored properly." (*Id.* at 7.)

In a subsequently filed motion,[2] the plaintiff submits proof that his disciplinary charge was for assault on staff with a homemade knife (Doc. No. 7-1 at 29–31), and that the disciplinary board recommended a punishment of 30 days in punitive segregation, loss of 3 months' worth of prisoner sentence reduction credits, and a five-dollar fine. (*Id.* at 33.) He also indicates that the disciplinary

---

[2] The plaintiff filed a Motion to Submit Evidence (Doc. No. 7), which would introduce into the record the official TDOC policies and procedures he believes to be applicable here, as well as the official documentation of the disciplinary proceedings at issue—both of which include the plaintiff's handwritten annotations. (*See* Doc. No. 7-1.) The court will grant this Motion and consider its attachments in the course of this initial review. *See Alshimary v. Russell*, No. 2:24-CV-182, 2025 WL 88102, at *2 (W.D. Mich. Jan. 14, 2025) (screening complaint under PLRA, including by "look[ing] outside the allegations in the complaint," to documents on file that are referenced in the complaint) (citing, *e.g.*, *Nixon v. Wilmington Trust Co.*, 543 F.3d 354, 357 n.2 (6th Cir. 2008) (noting that a court reviewing a motion to dismiss "may consider a document not formally incorporated by reference in a complaint when the complaint refers to the document and the document is central to the claims")).

board chairperson had a "conflict of interest" born of her fear of him, which left the plaintiff "unable to have a fair [and] impartial hearing." (*Id.*) He also submits proof that, nine days prior to the alleged assault, he had pled guilty to the disciplinary offense of threatening an employee. (*Id.* at 38–40.)

**C. Analysis**

The plaintiff claims that the disciplinary proceeding conducted by hearing officer Pierce and witnessed by CMO Turman deprived him of his rights and resulted in his wrongful conviction. (Doc. No. 1 at 4, 6–7.) The court liberally construes the Complaint to claim a deprivation of the Fourteenth Amendment right to procedural due process. "The Fourteenth Amendment's Due Process Clause protects individuals against the deprivation of life, liberty, or property without due process. '[T]hose who seek to invoke its procedural protections must establish that one of these interests is at stake.'" *Damron v. Harris*, No. 21-3877, 2022 WL 4587625, at *2 (6th Cir. July 28, 2022) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). Convicted prisoners "have narrower liberty interests than other citizens as 'lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Grinter v. Knight*, 532 F.3d 567, 573 (6th Cir. 2008) (quoting *Sandin v. Conner*, 515 U.S. 472, 485 (1995)). In the context of prison discipline, "[a] prison disciplinary action does not implicate a liberty interest requiring due process safeguards unless the punishment imposed will 'inevitably' affect the duration of an inmate's sentence or inflict an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Damron*, 2022 WL 4587625, at *2 (quoting *Sandin*, 515 U.S. at 484, 487).

Here, the plaintiff's filings demonstrate that the disciplinary board recommended a punishment which included loss of 3 months' worth of Prisoner Sentence Reduction Credits

5

(PSRC), and his Complaint asks for those "good days" to be reinstated. A deprivation of accumulated sentence credits—as opposed to a loss of the opportunity to receive sentence credits in the future —would operate to extend the period of the plaintiff's confinement and therefore would implicate a constitutionally protected liberty interest. *See Sotherland v. Myers*, 41 F. App'x 752, 753 (6th Cir. 2002) (affirming dismissal of due process claim because "disciplinary board did not order the loss of accumulated good-time or sentence credits," and "a lost opportunity to receive prospective sentence credits" did not suffice to show deprivation of liberty interest); *see also*, *e.g.*, *Peterson v. Holland*, No. 16-6121, 2017 WL 6853097, at *1–2 (6th Cir. July 7, 2017) (rejecting viability of procedural due process claim where disciplinary board did not "call[] for the withdrawal of good-time credits," but merely imposed punishment that "could keep [inmate] from getting a sentence reduction"). Tennessee law also creates a liberty interest by restricting the authority to deprive state inmates of "sentence credits previously awarded," allowing such punishment "only for the commission of any major infraction designated by the department as a Class A disciplinary offense," including, *e.g.*, "assault with a deadly weapon." Tenn. Code Ann. § 41-21-236(a)(5)(A); *see also Barnes v. Garner*, No. 3:18-CV-01030, 2020 WL 4339649, at *9 (M.D. Tenn. July 27, 2020), *report and recommendation adopted*, 2020 WL 4735140 (M.D. Tenn. Aug. 14, 2020).

The plaintiff has thus met the threshold requirement of alleging that a liberty interest was at stake in his disciplinary proceedings. However, in asking the court to "reinstate all [his] good days and compensat[e] [him] for the mental stress" and other effects of "this wrongful conviction" (Doc. No. 1 at 7), delivered by officials who forged documentation and otherwise failed to be fair and impartial (*id.* at 4–5; Doc. No. 7-1 at 33), the plaintiff seeks relief that is either reserved to the domain of habeas corpus (reinstatement of lost good-time credits) or that would necessarily imply

6

the invalidity of the disciplinary punishment imposed (damages for harm resulting from a wrongful conviction by a biased decisionmaker who forged documents).

Under well-established Supreme Court precedent, such requests for relief are not cognizable in a Section 1983 action. In *Preiser v. Rodriguez*, 411 U.S. 475 (1973), the Court held that an inmate who seeks restoration of good-time credits lost in a prison disciplinary proceeding is seeking relief that would shorten the length of his confinement in prison, and that such relief must be pursued in habeas corpus rather than under Section 1983. *Id.* at 487, 500. And, in *Edwards v. Balisok*, 520 U.S. 641 (1997), the Court held that a "claim for declaratory relief and money damages[] based on allegations of deceit and bias on the part of the decisionmaker" would, if successful, necessarily imply that the disciplinary hearing and resulting revocation of sentence credits was invalid; therefore, such claims are not cognizable under Section 1983 unless the prisoner can demonstrate that the disciplinary conviction has previously been invalidated. *Id.* at 646, 648 (citing *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994)).

Here, there is no indication that the plaintiff's disciplinary conviction has been overturned or otherwise invalidated. His claims are not cognizable under Section 1983, and his Complaint must be dismissed on that basis. *Id.* at 649.

### III. CONCLUSION

For the above reasons, the plaintiff's Motion to Submit Evidence (Doc. No. 7) is **GRANTED** and this action is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(b)(ii) and 1915A(b)(1), for failure to state a claim upon which relief can be granted. The Court **CERTIFIES** that any appeal from this dismissal would not be taken in good faith. 28 U.S.C. § 1915(a)(3).

In light of this outcome, the plaintiff's other pending motions (Doc. Nos. 5, 6, and 9) are **DENIED** as moot.

This is the final order in this action. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b)(1).

It is so **ORDERED**.

_____
Aleta A. Trauger
United States District Judge

8

Case 1:24-cv-00073   Document 10   Filed 01/30/25   Page 8 of 8 PageID #: 97